# The Northern Bank of Mississippi, use of Smith, *v.* Kyle *et al.*

A set-off cannot be filed by a maker of a note which has been assigned, unless it appear that the defendant was the owner of the set-off at the time of the assignment of the note, or at the time of notice of such assignment.

The rule in relation to set-off is the same, whether the suit on the note be brought in the name of the assignee, or of the payee for the use of the assignee.

In absence of other proof, the commencement of a suit *is notice* of assignment of a note.

IN ERROR from the circuit court of the county of Marshall.

Action of debt on a writing obligatory, made by Ralph Graves, C. Kyle, and J. S. Curtis, for five thousand two hundred and sixty-six dollars and seventy cents, dated 8th January, 1838, payable at eight months to the Northern Bank of Mississippi. It was in proof that the banking company of McEwen, King & Co. were the real payees of the instrument, and that it was made payable to the nominal payees with the consent of the obligors.

The defendants pleaded payment, and filed as an off-set a bill of particulars of various notes of McEwen, King & Co. and certificates of deposit to different persons. Curtis withdrew his plea, and there was a judgment by default as to him, and a trial as to Kyle. When the set-offs were offered in evidence, the plaintiffs' counsel objected to their being read, because there was no evidence that Kyle was the owner of them at the time the suit was brought, but the court overruled the objection. The defendant offered evidence to show the time when the set-offs accrued. The note was taken by plaintiffs' attorney to Kyle on the 4th of July, 1839, to know whether he had any defence before it would be received. Kyle said that he had, but declined stating it. The suit

The Northern Bank of Mississippi, use of Smith, *v.* Kyle *et al.*

was commenced on the 13th of July, 1839.    There was a verdict for defendant, and motion for a new trial overruled.

WHITAKER for plaintiffs in error.

The plaintiffs insist that the court below erred:

1. In permitting the bills and certificates of deposite, made by the banking company of McEwen, King & Co. to be read to the jury.

2. In permitting them to be read without proof that defendant, Kyle, owned said bills and certificates at or before the commencement of the suit.

3. In receiving oral testimony of the nature of the plaintiffs' title to the obligation, which is the foundation of this suit, when the same was set out in the attorney's receipt for said obligation.

4. The court erred in receiving evidence of the nature of the plaintiffs' title to the obligation.

5. The court below should have granted a new trial to the plaintiffs.

In order to entitle the defendant to read the bills and certificates of deposite under the plea of payment, they must be shown to have belonged to both of the defendants and Ralph Graves, at a time when the obligation was the property of McEwen, King & Co., and before the plaintiffs obtained a legal title to the same. In this case the bills and certificates were the property of the defendant Kyle alone.    To entitle the defendant Kyle to a set-off, the debts should be mutual; the dealings should have been between all of the obligors and McEwen, King & Co.    See How. & H. 615;  Warner *et al. v.* Barker *et al.* 3 Wend. 400.

The title of the plaintiffs is a legal title, and to defeat a recovery by them, defendants should have shown themselves the owners of bills and certificates that they could have used against McEwen, King & Co., at or before the institution of the suit against them. From that time, or from the service of process, defendants had notice of plaintiffs' claim to the obligation.

Debts on the obligee or payee cannot be purchased in and used as a set-off after notice of assignment received by the obligor or maker.   See Howard & Hutch. page 374.

If the plaintiffs have only an equitable claim to the money due

31*

on the obligation, the defendant Kyle cannot with knowledge that they have such claim, purchase bills and certificates, make payments, or do any other acts to defeat the plaintiffs' security or claim to said obligation. See 2 Story's Equity, page 318.

The best evidence in the power of the party to produce, must be produced before evidence of an inferior grade is admissible. This is a principle too plain to require authority to support it.

Unless the plaintiffs' title had been put in issue by a special plea, any evidence in relation thereto was improper, and should have been rejected by the court. In the action of assumpsit, or an action of debt on a simple contract, the plea of non-assumpsit or *nil debit* would put the plaintiffs' right to sue in issue. But under the plea of payment, and pleas calling in question the consideration of the obligation, no evidence can be received except such as has a tendency to establish the special matter pleaded. See 2 Howard, page 642.

The testimony upon which the jury found their verdict being illegal, the court should have granted a new trial.

Mr. Chief Justice SHARKEY delivered the opinion of the court.

This suit was brought on a writing obligatory for the sum of five thousand two hundred and sixty-six dollars seventy cents, dated the 8th of June, 1838, payable at eight months, made by the defendants and one Graves. It appears by the evidence that the banking company of McEwen, King & Co., were the real payees of the writing obligatory, although it was made payable to the Northern Bank; that it was so made payable with the consent of the obligors.

The defendants pleaded payment, and filed as an off-set a bill of particulars of sundry notes of McEwen, King & Co., and certificates of deposits, payable to various persons. The defendant Curtis withdrew his plea and suffered a default, but the issue was tried and found in favor of Kyle. A new trial was moved for, and refused, and a bill of .exceptions taken. The principal question raised for our determination, is as to the admissibility of the set-off.

When the notes and certificates of deposit of McEwen, King & Co. were offered, the plaintiffs' counsel objected, because there was

no evidence that Kyle was the owner of them at the time the suit was brought, they being payable to other persons than Kyle, and indorsed in blank. But the court admitted them as a set-off without any evidence showing when Kyle became the owner.

There can be no doubt that when a note or other liability of the payee of a note, is attempted to be set-off by the maker of the note on which suit is brought as against the assignee, such set-off cannot be allowed, unless it also appears that the defendant was the owner of such set-off at the time he received notice of the assignment. Barbour on Set-Off, 63. Our statute allows all offsets which accrued or were held by the maker before notice of assignment, but it does not allow offsets subsequently acquired. These notes and certificates were not payable to Kyle, but he acquired them by indorsement, and as they were not offsets as against the assignees, unless he held them when he received notice of assignment, it devolved on him to prove that he did so hold them. Not being payable to him, they were not apparent offsets, and it was for him to show that he received them in time. It was not for the plaintiffs to prove that they were not good offsets. The rule of law is the same, whether the suit be brought in the name of the assignee, or in the name of the original payee for his use. There was no proof as to the time when notice of the assignment was given. In the absence of other proof of that fact, the bringing of the suit is to be regarded as notice, and the plaintiffs only required proof of ownership of the set-off at the time suit was brought, and this they were entitled to. There was not only no proof establishing the sufficiency of the set-off, but there was proof which tended strongly to establish its insufficiency. The note was taken by the plaintiffs' attorney to Kyle on the 4th of July, 1839, to ascertain whether he had a defence, before it would be received. Kyle answered that he had a defence, but had not determined whether he would set it up, and also declined telling what it was. He stated that if he did not determine to set it up that he did not wish it spoken of, as it was of such a nature that it might implicate other persons who stood fair in society; but mentioned no other defence, and told the witness that if he would not sue, he would try and get property from Graves, the principal obligor, but that if suit was brought he would resist

it to the last.    Suit was brought on the 13th of July, 1839, which was but nine days after this conversation.    This conversation, it is true, can only lead to conjecture, but it leads to a conjecture of the existence of any other defence sooner than a set-off.    We cannot imagine that an off-set would have been concealed from such a motive as that mentioned.

This is the only question which is deemed of any consequence in the case.

Judgment reversed and new trial granted.